STATE OF NEW YORK
STATE EDUCATION DEPARTMENT
-------------------------------------------------------------------------------
In the Matter of

WENDY HARRISON, on behalf of a minor child,
ELIZA COREY,

                                                    **VERIFIED**
                                                    **PETITITON**

                        Petitioner,

      -against-

BOARD OF EDUCATION, HONEOYE FALLS-LIMA
CENTRAL SCHOOL DISTRICT

                        Respondent,
-------------------------------------------------------------------------------

WENDY HARRISON, being duly sworn deposes and says:

1. My name is Wendy Harrison (hereinafter "Petitioner") and I reside at 1904 W. Bloomfield Rd., Honeoye Falls, NY 14472, within the Honeoye Falls-Lima Central School District (hereinafter "District").

2. My relationship to ELIZA COREY (hereinafter "Eliza") is that I am her mother.

3. My attorney, James Cole, Esq., the owner of the firm The Law Office of James Cole, PLLC, with an office located at 2509 Browncroft Blvd., Suite 224, Rochester, New York, 14625, has prepared this petition on my behalf.

4. On October 4, 2019, Eliza was suspended from the District for five school days beginning October 7, 2019 through and including October 15, 2019 (Letters dated October 4, 2019) (*Exhibit A*). Additionally, a recommendation was made to the

Superintendent to hold a Superintendent's hearing (Letter dated October 8, 2019) (*Exhibit B*). The basis for the short-term suspension was an allegation of a violation of the Honeoye Falls-Lima Code of Conduct occurring on October 1, 2019. Specifically, it was alleged that on October 1, 2019, Eliza wrote on a bathroom wall in the high school, "iM gonna BOMB This school. just you wait."

5. Eliza's out-of-school suspension began on October 8, 2019. The letters in *Exhibits A* and *B* made no mention of what type of alternative instruction Eliza would be receiving, nor did they indicate when the instruction would start. It wasn't until October 10, 2019, after a letter was sent to the District demanding alternative instruction (*Exhibit C*) that the District attempted to provide instruction. The instruction received on October 10, 2019, consisted of only a one-hour tutoring session. Acknowledging their failure to provide immediate instruction, the District offered Eliza the ability to "make up" an additional 10 hours of instruction (*Exhibit D*). Although instruction was expected to be provided on October 11, 2019, the District's tutor cancelled the session. As a result, Eliza did not begin receiving proper alternative instruction until October 15, 2019.

6. On October 16, 2019, a Superintendent's hearing was conducted with James M. Kane, Esq. as the appointed hearing officer. Eliza, Eliza's father, Eliza's step-father, our attorney James Cole, and myself attended the hearing. During said hearing the District offered evidence in the form of video surveillance and witness testimony. At no point prior to the hearing or during the hearing did Eliza ever admit to the alleged conduct. In fact, Eliza has always steadfastly denied the allegations. At the hearing the District never offered into evidence any direct evidence in support of the allegation. Instead, the District relied completely on circumstantial evidence.

7.      During the Superintendent's hearing the District called several witnesses, including Kristopher Hernandez (hereinafter "Kris"). Kris testified that he is a junior in the High School and transferred to the District at the beginning of the 2017-2018 school year. Kris testified that on October 1, 2019, at approximately 8:30am, he and a friend, Alexis Pfenninger (hereinafter "Lexi"), entered the High School's gender neutral bathroom. Lexi also testified at the hearing and provided an almost entirely different account of what they had both observed. Lexi and Kris provided different reasons for going to the bathroom in the first place. Kris testified that Lexi wanted to "wash her face," and he actually observed her do so. Lexi testified she never washed her face, and that she only went to the bathroom to brush her hair. They both testified that they saw two females exit the two bathroom stalls and then immediately exit the bathroom. Kris then testified that as he and Lexi we exiting the bathroom, he coincidentally dropped his phone on the ground and while leaning over to pick it up, he happened to look towards one of the stalls and notice writing on the wall inside. Kris further testified that he brought it to Lexi's attention and they both walked over to the stall to examine the note. He specifically testified that Lexi saw the note with him on the stall wall. Kris further testified that they left the bathroom and then *together*, they immediately reported the note to a school staff member who happened to be right outside the bathroom. Lexi's testimony directly contradicted Kris' account. Lexi testified that she never saw the note on the bathroom wall with Kris, that Kris had never brought any note to her attention while in the bathroom, and that when they exited the bathroom, she walked directly to class and assumed Kris had done the same. Lexi testified that she never reported seeing a note on the bathroom wall with Kris, nor did she ever witness him report the note to

anyone by himself. During the hearing, the District offered into evidence video surveillance of the hallway showing the main door to the gender neutral bathroom. The video clearly showed Kris and Lexi exit the bathroom, and then they each walk away from the bathroom in different directions. The video does show some distance of the hallway on both sides of the bathroom's main door. At no point on the video does it depict Kris or Lexi talking or interacting with any school staff member. Kris also testified that he did not see who wrote the note on the wall, but that it was there when he saw the female exit the large stall, and that "it wasn't there before." Yet, on cross-examination, Kris testified that he had gone to the bathroom earlier that morning and never looked inside of the large stall, making it impossible for him to know what was or "wasn't there before."

        8.     Most importantly, Kris testified that he *immediately* reported seeing the note to a school staff member after he exited the bathroom. The video surveillance shows Kris and Lexi exiting the bathroom at 8:40am. During the hearing, High School Principal David Roth (hereinafter "Roth") testified that he was informed of the note by his building secretary at approximately 9:43am. Roth testified that he immediately put into effect a hold in place, and had a building custodian lock the bathroom door. Roth testified that he later learned from his building secretary that a "couple of students" had reported seeing the note, and one of them was Kris. Yet, Kris never testified that he reported the note to the Principal's building secretary. He testified that he reported it to a hall monitor who happened to be right outside of the bathroom when he exited at 8:40am. In addition, Kris testified that he reported the note "immediately" upon exiting the bathroom, which is shown on video at 8:40am. Nonetheless, Principal Roth wasn't notified of the note until

more than an hour later. Despite this extremely obvious and significant time discrepancy, the District's investigation only focused on individuals who had entered the bathroom *before* 8:40am. At the hearing, Mr. Ryan Teeter, a school counselor who was involved in the investigation, testified that they narrowed down a time frame of potential suspects based on the testimony of Kris and another witness, Evelyn Manchester (hereinafter "Evie"). The video surveillance showed Evie enter the bathroom at 8:34am on the morning of October 1, 2019, and exit at 8:37am. Evie testified that she did not notice any note written on the wall of the large stall during that bathroom visit. However, Evie did testify that she went back to the same bathroom later that same morning, possibly an hour-and-a-half or two hours later, and saw a large group of students inside (roughly 15 people). This testimony is critically important because the video surveillance shows many different students enter and exit the bathroom *after* 8:40am. Additionally, it proves that the note was either not reported immediately by Kris at 8:40am, or if it was, the District failed to notify Roth for another hour. Kris also testified that he too returned back to the bathroom after first observing and reporting the note. Kris testified that during this return visit, he saw other students in the bathroom talking about the note and he noticed that the note had been partially scribbled out. Kris admitted that he didn't report this new information to anyone because it wasn't any of his business and he had figured a teacher/staff member had already seen it. This testimony is contradictory to Roth's testimony that his building secretary was informed by Kris about the note. Or in the alternative, if Kris is to be believed about when and to who he reported the note, then the building secretary, while acting as a hall monitor at 8:40am, waited over an hour later to notify Roth.

9. Additionally, during the Superintendent's hearing the District offered into evidence the testimony of two witnesses regarding alleged similarities between the note on the bathroom wall and Eliza's known handwriting. Neither witness was qualified in any manner to analyze handwriting samples, or provide an opinion concluding who wrote the note. Both Mr. Teeter and Ms. Glavin admitted that certain letters in the bathroom wall note looked unique, and they did not compare those unique letters to Eliza's known handwriting samples. Additionally, at no time during the course of the hearing did the District ever offer into evidence, mark for identification, or even show to Eliza the handwriting samples that Mr. Teeter and Ms. Glavin alleged had been written by Eliza. As a result, we were unable to review for ourselves what, if any, similarities existed.

10. Eliza exercised her right to testify on her own behalf at the hearing, and continued to deny the allegations. Additionally, Eliza called a witness, Lauryn Probst (hereinafter "Lauryn"), who testified that she was in the bathroom that morning with Eliza and never observed her write a note on the stall wall. In fact, Lauryn testified that Eliza never went inside of the large stall during their trip to the bathroom. Furthermore, Eliza offered handwriting examples from recent school work assignments into evidence, none of which remotely resembled the handwriting of the note on the wall.

11. Despite the lack of convincing evidence, the hearing officer ruled there was substantial and competent evidence of Eliza's guilt. On October 17, 2019, we were informed that the Superintendent had adopted the hearing officer's findings and an out-of-school suspension would continue through January 26, 2020 (*Exhibit E*).

12. Having now heard and seen the evidence against Eliza, Petitioner contacted a forensic document examiner and a polygraph examiner in an attempt to

obtain new relevant evidence of Eliza's innocence. Because we were never provided with the handwriting samples analyzed by and testified about by Mr. Teeter and Ms. Glavin, the forensic document examiner used the same school work assignments that had been offered into evidence by Eliza at the hearing. The forensic document examiner R. Joseph Jalbert, is a court qualified examiner in both New York State and federal court. Mr. Jalbert's conclusion is that the note on the bathroom wall was written by someone other than Eliza (*Exhibit F*). In addition to a forensic document examiner, Eliza submitted to a polygraph examination, conducted by Richard Schoeberlein of Sieger Services Group. The result of the polygraph was that Eliza was being truthful when stating that she did not write the note on the bathroom wall (*Exhibit G*). Both reports were provided to the District's attorney on November 4, 2019, addressed to the attention of the Superintendent of Schools, Gene Mancuso (hereinafter "Mancuso). On November 8, 2019, my attorney received a letter from the District's attorney (*Exhibit H*), returning the above referenced polygraph and forensic document examiner reports. It seemed clear from the letter that Mancuso was not going to consider our newly discovered evidence. As a result, my attorney and Eliza spoke with various media outlets and shared the information from the two reports with the public

13. On November 16, 2019, my attorney filed an appeal on behalf of Eliza to the Honeoye Falls-Lima School District Board of Education (hereinafter "Board").

14. On December 10, 2019, at a regularly scheduled District Board meeting, the Board made an announcement regarding its consideration of Eliza's appeal. The Board declared that it could not consider any evidence that was not part of the Superintendent's hearing conducted on October 16, 2019.

15. On December 20, 2019, Petitioner's attorney received a letter from the District attorney stating that the Board had voted to overturn and expunge Eliza's short-term suspension, and uphold the long-term suspension (*Exhibit I*).

16. The Board's decision to uphold the Superintendent's findings is truly remarkable. Assuming the Board reviewed all of the evidence presented at the hearing, in order to uphold the Superintendent's findings the Board would have had to ignore the significant and obvious discrepancies between Kris and Lexi's testimonies, as well as the testimony of Roth. The discrepancy between Kris and Lexi's testimonies regarding what they saw in the bathroom goes directly to the only material issue in this case. Either they both saw the note and immediately reported it together as Kris testified, or, according to Lexi and the video surveillance, they did not. If they did report it immediately, Lexi is lying or is mistaken, and the video does not show them reporting it to the hall monitor. For this to be true, the building secretary would have been informed of the note at 8:40am, more than an hour before she notified Roth. There was no evidence introduced at the hearing that the building secretary waited any period of time between when she was informed of the note and when she reported it to Roth. If Roth and his building secretary were not notified about the note until 9:43am, then the District failed to investigate an additional hour worth of potential suspects on video entering and exiting the bathroom. Moreover, in order to uphold the Superintendent's findings, the Board had to have ignored or failed to consider the two reports from the forensic document examiner and polygraph examiner submitted for their review. To ignore such valuable and relevant evidence is a failure of the Board to uphold its duties and obligations as Board members.

17.     Accordingly, for the foregoing reasons, I respectfully request that the Commissioner substitute judgement for the Board of Education and overturn the Board's decision to uphold the Superintendent's suspension, and expunge any and all record associated with said suspension.

**WHEREFORE**, Petitioner respectfully requests an Order from the Commission of Education as follows:

1.     Reversing the Honeoye Falls-Lima Central School District Board of Education's decision to uphold the Superintendent's imposition of a long-term suspension;

2.     Expungement of the Superintendent's long-term suspension;

3.     For any and all other and further relief as the Commissioner deems just and proper.

DATED:     January 17, 2020

*[signature]*

Wendy Harrison
1904 W. Bloomfield Rd.
Honeoye Falls, NY 14472
585-732-4046