UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WENDY HARRISON, as parent and natural guardian of ELIZA COREY, a minor under the age of eighteen years,

                              Plaintiffs,

    v.

BOARD OF EDUCATION OF THE HONEOYE FALLS-LIMA CENTRAL SCHOOL DISTRICT, GENE MANCUSO, in his official and individual capacity, and JAMES KANE, in his official and individual capacity,

                              Defendants.

**MEMORANDUM OF LAW OF DEFENDANTS BOARD AND MANCUSO REPLYING IN SUPPORT OF MOTION TO DISMISS AND OPPOSING CROSS-MOTION FOR LEAVE TO FILE UNTIMELY NOTICE OF CLAIM**

Civil Action No. 6:22-cv-6086

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

POINT I

PLAINTIFFS' ARGUMENTS CONCERN ALLEGED FAILURES
TO COMPLY WITH STATE LAW PROCEDURES, NOT FEDERAL
DUE PROCESS REQUIREMENTS .....................................................................................2

POINT II

THE ALLEGATIONS DO NOT PRESENT A MERITORIOUS
SUBSTANTIVE DUE PROCESS CLAIM............................................................................6

POINT III

PLAINTIFFS HAVE FAILED TO SHOW THEIR ALLEGATIONS
ESTABLISH THE ELEMENTS OF A STIGMA-PLUS CLAIM .................................................7

POINT IV

THE HEARING AND AVAILABILITY OF APPEALS DEFEAT
THE STIGMA-PLUS CLAIM ...............................................................................................8

POINT V

THE COURT LACKS JURISDICTION TO CONSIDER
PLAINTIFFS' CROSS-MOTION ..........................................................................................9

CONCLUSION......................................................................................................................10

# INTRODUCTION

Defendants Board of Education of the Honeoye Falls-Lima Central School District ("Board") and Gene Mancuso moved to dismiss the claims asserted against them, arguing:

(1) Plaintiff Corey received notice and an opportunity to be heard prior to her initial five-day suspension, satisfying federal due process requirements;

(2) She was granted a full evidentiary hearing prior to her suspension beyond the initial five days, also satisfying federal due process requirements;

(3) No substantive due process claim could be raised where it was simply a procedural due process claim under a separate label;

(4) In any event no conduct so "brutal and offensive to human dignity" as to raise a substantive due process issue was alleged;

(5) No policy, custom, or practice of the Board had been alleged to sustain *Monell* liability against it upon Plaintiffs' claims;

(5) Even if Defendant Mancuso made a defamatory statement about Plaintiff Corey, it was allegedly uttered in private to the Board, which is insufficient to support a stigma-plus due process claim;

(6) The availability of postdeprivation process in the form of a hearing and multiple appeals – in which Plaintiffs were ultimately successful – defeats the stigma-plus claim;

(7) Defendant Mancuso is entitled to qualified immunity with respect to Plaintiffs' due process claims;

(8) Plaintiffs had failed to serve a notice of claim mentioning the allegedly defamatory statement by Defendant Mancuso, and thus the Court had no jurisdiction to entertain that claim;

(9) The defamation claim was barred by the common interest privilege; and,

(10) The claims against Defendant Mancuso in his official capacity should be dismissed as redundant of the claims against the Board.

Plaintiffs concede the official-capacity claims against Defendant Mancuso should be dismissed, but otherwise oppose dismissal and seek leave to serve an untimely notice of claim.

# POINT I

## PLAINTIFFS' ARGUMENTS CONCERN ALLEGED FAILURES TO COMPLY WITH STATE LAW PROCEDURES, NOT FEDERAL DUE PROCESS REQUIREMENTS

The District Defendants' original motion showed Plaintiff Corey received adequate due process (notice and an opportunity to be heard) prior to her initial five-day suspension, and adequate due process (a hearing) prior to the continuation of her suspension beyond the initial five days. Plaintiffs' opposition does not contest that she received sufficient due process to support the initial five-day suspension. They argue only that the hearing did not constitute adequate due process to support the longer suspension beyond five days. However, their arguments concern alleged failures to comport with procedures required only by state law, rather than deficiencies falling below federal due process standards.

As argued in the District Defendants' original motion, the federal Due Process Clause – in cases involving student suspensions of more than five days – only requires the student be afforded an evidentiary hearing. No more specific procedures are required under federal constitutional law. More precise requirements are left to *state* law, and do not, by the state's action, become constitutional requirements.

It is undisputed that a full hearing was afforded to Plaintiff Corey. Plaintiffs' objection is that the hearing did not comport with state law – specifically, Education Law § 3214(3)(c)(1), which provides that the hearing officer shall make findings of fact. However, the provisions of that statute do not define – or expand – what is required by the federal Due Process Clause. *DeFabio v. East Hampton Union Free School District,* 658 F.Supp.2d 461, 492-493 (E.D.N.Y. 2009). Nothing in the federal Due Process Clause jurisprudence, for example, requires that a presuspension hearing recommendation include explicit findings of fact. Instead, to satisfy

2

federal due process requirements under *Goss,* the student need only be provided a fair opportunity to tell her side of the story and rebut the evidence against her; she need not be granted, for example, the procedural protections of a criminal trial. *Board of Education of Monticello Central School Dist. v. Commissioner of Education,* 91 N.Y.2d 133, 139-140 (1997).

In *DeFabio,* the Eastern District dealt with similar claims in the following passage:

> Plaintiffs' additional argument, that the failure by defendants to fully comply with New York Education Law Section 3214 can provide a basis for a due process claim, is similarly flawed. Plaintiffs correctly note that the Commissioner, in overturning the suspensions, found that the school officials failed to fully comply with state law . . . . Contrary to plaintiffs' contention, however, the fact that the New York State Commissioner of Education reversed the school's decision under state law does not indicate that there was a deprivation of due process under federal constitutional law. In other words, a failure to comply with N.Y. C.L.S. Educ. § 3214 does not necessarily constitute a violation of due process. Here, because the constitutional due process requirements were met, the failure to comply with certain provisions under state education law (that are not required by the United States Constitution) cannot give rise to a federal due process claim under Section 1983.

*DeFabio, supra* at 492.

Instead, any failure to adhere to the state-law requirements for the hearing process would be remediable through appeal to the Commissioner of Education and/or by proceeding under Article 78 of the New York Civil Practice Law and Rules – *as Plaintiffs in fact did in this case, with success.* The availability of a postdeprivation remedy for alleged deficiencies in a school disciplinary hearing, in the form of a Commissioner's appeal or Article 78 proceeding, provided adequate process, and eliminates any claim of violation of *federal* due process requirements.

Thus, in *Cohn v. New Paltz Central School District,* 363 F.Supp.2d 421 (N.D.N.Y. 2005), a student afforded a disciplinary hearing challenged his suspension as violating due process because he was not given the opportunity to cross-examine the sole witness who implicated him

3

in the alleged misconduct, and because there was not sufficient evidence to support the suspension. *Id.* at 432.  The Northern District observed that although Education Law § 3214 provides various specific procedural protections, "a violation of state law is not a recognizable claim under 42 U.S.C. § 1983 . . . [and] Plaintiff must allege a violation of a federal constitutional or statutory right" instead. *Ibid.*  The federal due process requirements, the Northern District noted, were simply notice and a hearing appropriate to the nature of the case. *Id.* at 423.  Where a hearing is held at a meaningful time and in a meaningful manner, the court further observed, an Article 78 proceeding to address any procedural deficiencies in the hearing as held was a sufficient post-deprivation remedy to satisfy federal due process requirements. *Ibid.*  The court found the student in that case had "successfully vacated the disciplinary decision to which he objected by way of his Article 78 proceeding," and thus he could not show that the procedural safeguards established by the state had been insufficient to protect his rights. *Ibid.* As such, "[t]he Article 78 proceeding constituted part of the due process protection he received, and it cured any procedural defect that may have occurred.  Therefore, Plaintiff has failed to state a cause of action for violation of his procedural due process rights under the Fourteenth Amendment." *Id.* at 433-434.

  Similarly, in *Horton v. Westling,* 294 F.Supp.3d 213 (N.D.N.Y. 2018), a student claimed a hearing officer deprived him of adequate discovery into the evidence that ultimately led to his suspension. *Id.* at 218.  The Northern District held that the availability of an appeal to the Commissioner of Education and/or of an Article 78 proceeding constituted sufficient postdeprivation remedies to satisfy federal due process requirements and doom the student's claim on a motion for judgment on the pleadings. *Id.* at 221-223.  The only exception, the court noted, would be if the violations were not "isolated and random" but "systemic," circumstances

4

present neither in that case nor here. *Id.* at 223. On appeal, the Second Circuit agreed, stating, "where, as here, the alleged deprivation resulted from the 'random, unauthorized acts' of a state employee without final decision-making authority, 'the Due Process Clause of the Fourteenth Amendment is not violated . . . so long as the State provides a meaningful postdeprivation remedy.'" *Horton v. Westling,* 765 Fed.Appx. 531, 532-533 (2d Cir. 2019) (summary order; quoting *Hellenic American Neighborhood Action Committee v. City of New York,* 101 F.3d 877, 880 (2d Cir. 1996)). The same reasoning applies to bar Plaintiffs' due process claims here.

Plaintiffs also claim Defendant Mancuso "lied" to the Board of Education during an "Appeal Process Meeting" (whatever that is) to the effect that Plaintiff Corey confessed to the charged misconduct, and the Board improperly considered this non-record evidence on appeal – again, purportedly in violation of the same *state* law, Education Law § 3214(3)(c)(1). According to Plaintiffs' own allegations, however, this occurred *after* the hearing had been completed, the hearing officer rendered his recommendation, that recommendation was adopted by Defendant Mancuso, and Plaintiff Corey was given the extended suspension. Thus, by the time of the alleged false statement Plaintiff Corey had *already been afforded the full due process required under Goss* – an evidentiary hearing with the opportunity to rebut the evidence against her. Further, to the extent Plaintiffs allege Defendant Mancuso lied in the course of an appeal to the Board, they are describing a "random, unauthorized act" of someone who, at the Board appeal stage, was not the final decision-maker, rather than a "systemic" problem, and the availability of a postdeprivation remedy under Article 78 or through a Commissioner's appeal eradicates any claim of federal due process violation. *Horton, supra,* 765 Fed.Appx. at 532-533.

Indeed, the doctrine of primary jurisdiction required them to present any such claim to the Commissioner of Education. *Langston ex rel. Langston v. Iroquois Central School District,*

5

291 A.D.2d 845 (4th Dept. 2002); *Staatsburg Water Co. v. Staatsburg Fire District,* 72 N.Y.2d 147, 156 (1988). They did not. (See Spagnoli Reply Aff.) Quite to the contrary, they argued before the Commissioner, when it benefited them, that the Superintendent *must* consider material they supplied despite it not being part of the hearing record. (See id., Ex. F, pp. 11-14.) They should be equitably estopped from adopting the opposite position now.

In short, the issues raised by Plaintiffs, even if accurate, would not indicate minimum federal due process was not provided. Instead, they are at best allegations of failure to follow state law, and Plaintiffs had an adequate remedy under state law for such violations.

**POINT II**

**THE ALLEGATIONS DO NOT PRESENT
A MERITORIOUS SUBSTANTIVE DUE PROCESS CLAIM**

Substantive due process "does nOT forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit . . . . [Its] standards are violated only by conduct that is so *outrageously* arbitrary as to constitute a *gross abuse* of governmental authority." *Harlen Associates v. Village of Mineola,* 273 F.3d 494, 505 (2d Cir. 2001).

Plaintiffs' allegations regarding the failure of the hearing officer to make specific factual findings are, on their face, wholly inadequate to meet this standard.

Nor do their claims regarding Defendant Mancuso meet the standard. Again turning to *Horton,* in that case a hearing officer was accused of knowing of the existence of exculpatory evidence and failing to provide it to the student, and then referencing it during the hearing; acting as an advocate for the school district in the course of a subsequent appeal to its board of education; and meeting *ex parte* with school district officials at several points during the hearing.

6

*Horton,* 765 Fed.Appx. at 534.  These allegations are at least on a par with the accusation against Defendant Mancuso, but the Second Circuit found that while they were "troubling," they concerned "procedural due process concerns rather than substantive ones," and did not rise to the level of outrageously arbitrary acts constituting gross abuse of governmental authority.  *Ibid.*

Again, the same result should obtain here.

## POINT III

### PLAINTIFFS HAVE FAILED TO SHOW THEIR ALLEGATIONS ESTABLISH THE ELEMENTS OF A STIGMA-PLUS CLAIM

The District Defendants pointed out that Plaintiffs had failed to allege the statement by Defendant Mancuso was publicly disseminated.  Plaintiffs' response is that the statement "contributed to a deprivation of Eliza's liberty interests in her good name and reputation *with the Board."* (Emphasis added.)  If a government entity's false statement constituted a stigma-plus violation simply because it affected the plaintiff's reputation with *the government entity,* then every allegedly defamatory statement by a government entity would give rise to a stigma-plus claim, regardless of whether it was disseminated at all.  This would render all caselaw on the dissemination requirement meaningless.  The requirement, however, is that the government entity not only *make* a false statement, but *disseminate* it.  *Codd v. Velger,* 429 U.S. 624, 628 (1977); *see Wilcox v. Newark Valley Central School District,* 107 A.D.3d 1127, 1128, 1131-1132 (3d Dept. 2013) (letter placed in folder separate from personnel file of fired school district employee was not "disseminated" where there was no likelihood it would be accessible to prospective employers).  A statement by a superintendent to the board of education of his school district is not a "public" dissemination of a statement.

7

Plaintiffs also claim the Board's suspension of Plaintiff Corey itself publicly stigmatized her. However, the governmental deprivation of a property or liberty interest – the "plus" – and its potential impact on the public perception of an individual cannot, by themselves, supply the "stigma" element of a claim. Instead, a stigma-plus claim must consist of "(1) the utterance of a statement about [the plaintiff] that is injurious to her reputation, 'that is capable of being proved false, and that he or she claims is false' and (2) 'some tangible and material state-imposed burden . . . *in addition to* the stigmatizing statement.'" *Velez v. Levy,* 401 F.3d 75, 87 (2d Cir. 2005) (emphasis added; quoting *Doe v. Department of Public Safety ex rel. Lee,* 271 F.3d 38, 47 (2d Cir. 2001)). A plaintiff in a stigma-plus claim "cannot rely on the negative inferences drawn by the public from [a] suspension . . . to make out a stigma-plus claim." *Fehlhaber v. Utica City School District,* 2010 WL 4386936 (N.D.N.Y. 2010); *see O'Connor v. Pierson,* 426 F.3d 187, 195 (2d Cir. 2005) (even if "townsfolk drew negative inferences from [a] suspension, this is not enough to make out a stigma-plus claim"). Thus, Plaintiffs' speculation that Plaintiff Corey's reputation was tarnished simply by virtue of being suspended is not enough to supply the separate "stigmatizing statement" required for a stigma-plus claim.

## POINT IV

### THE HEARING AND AVAILABILITY OF APPEALS
### DEFEAT THE STIGMA-PLUS CLAIM

It must be remembered that a stigma-plus claim is a claim of denial of due process. The existence of a "stigma" or stigmatizing statement in connection with a "plus" or adverse governmental action, which combined constitute a deprivation of a liberty interest, does not automatically give rise to liability. The plaintiff must also have been denied *due process* in connection with the deprivation, just as with any other due process claim. Here, Plaintiff Corey

8

received a full evidentiary hearing prior to her suspension and prior to the alleged statement by Defendant Mancuso. That alone satisfies federal due process requirements, but the process afforded her did not end there; she subsequently had available, and pursued, an appeal to the Board and an appeal before the Commissioner of Education. On top of that, she also had an Article 78 proceeding available to vindicate any rights that were infringed. "Not only was [she] provided all the process [she] was due, there was an adequate post deprivation procedure to remedy the alleged deprivation, i.e., an Article 78 proceeding." *Horton v. Board of Education of Sherburne-Earlville Central School District,* 2017 WL 1437186, *5 (N.D.N.Y. 2017) (dismissing stigma-plus claim).

### POINT V

### THIS COURT LACKS JURISDICTION TO CONSIDER PLAINTIFFS' CROSS-MOTION

It is well-established – as Plaintiffs concede – that federal courts have no authority to consider or rule upon motions for leave to serve untimely notices of claim pursuant to General Municipal Law § 50-e(5). *See* General Municipal Law § 50-e(7) ("*All* applications under this section shall be made to the supreme court or to the county court"); *Brown v. Metropolitan Transportation Authority,* 717 F.Supp. 257, 259 (S.D.N.Y. 1989) (describing the language of Section 50-e(7) as "quite precise" in excluding federal courts from those bodies empowered to allow late notices of claim); *Roberts v. New York City Dept. of Corrections,* 1998 WL 391815 (E.D.N.Y. 1998); *Gavenda v. Orleans County,* 1997 WL 436740, *3 n.3 (W.D.N.Y. 1997).

Plaintiffs rely on a single forty-year-old slip opinion from the Southern District of New York, *Betancourt v. City of New York,* 1981 U.S. Dist. LEXIS 11162 (S.D.N.Y. 1981), which apparently is no longer followed even in the Southern District (*see Brown, supra).* Plaintiffs

9

urge this Court to adopt the reasoning that it may grant leave to serve a late notice of claim if a timely notice of *other* claims was served, the application was being made within a reasonable time after expiration of the ninety-day period specified by Section 50-e, and there was no showing of prejudice. However, since these factors are to be considered on virtually any application for leave to serve a late notice of claim, what Plaintiffs urge is for the Court to ignore Section 50-e(7). Put another way, in deciding whether an application fell within the purported "exception" to the rule that such applications must be filed in supreme or county court, the Court would be effectively taking up and deciding the application – the exception would swallow the rule.

The answer is simpler: the statute does not say that applications are to be considered by supreme or county court unless there is no prejudice involved, or unless a timely notice has been served presenting other claims. It states that *all* such applications are to be made to the supreme or county court. As the Southern District has more recently recognized, it does not admit of exceptions, and *Betancourt* can and should be ignored as a dead branch of the law.

## CONCLUSION

For all the foregoing reasons, and upon the above-cited authorities, Defendants Board of Education of the Honeoye Falls-Lima Central School District and Gene Mancuso demand judgment dismissing the claims asserted against them in Plaintiffs' Complaint, denying Plaintiffs' cross-motion, and granting such other and further relief as is just.

10

Dated: June 14, 2022
      East Syracuse, New York

Respectfully submitted,

Ferrara Fiorenza PC

**s/Charles C. Spagnoli, Esq.**
*Attorneys for Defendants Board and Mancuso*
Office and Post Office Address:
5010 Campuswood Drive
East Syracuse, New York  13057
(315) 437-7600
Facsimile (315) 437-7744
ccspagnoli@ferrarafirm.com

11