UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WENDY HARRISON, as parent and natural
Guardian of E.C., a minor under
the age of eighteen years,

                                        Plaintiff,          DECISION and ORDER

-vs-                                                        22-CV-6086 CJS

BOARD OF EDUCATION of the HONEOYE
FALLS-LIMA CENTRAL SCHOOL DISTRICT,
GENE MANCUSO, in his official and individual
Capacity, and JAMES KANE, in his official and
Individual capacity,

                                        Defendants.

_____


INTRODUCTION

Plaintiff brings this action alleging federal claims, for alleged constitutional violations under 42 U.S.C. § 1983, and a state-law claim, for defamation, all arising from a disciplinary hearing conducted under the New York State Education Law that resulted in Plaintiff's daughter, a high school freshman, being suspended from school for allegedly having made a bomb threat.  Now before the Court are motions by Defendants to dismiss the Complaint for failure to state a claim, pursuant to Rule 12 of the Federal Rules of Civil Procedure (ECF Nos. 13 & 15), and a cross-motion by Plaintiff for leave to file a late notice of claim, under Section 50-e(5) of New York General Municipal Law, concerning the state-law defamation claim (ECF No. 20).  For the reasons discussed below, the Court grants Defendants' motions as to the federal claims, and declines to exercise supplemental jurisdiction over the remaining state-law defamation claim or to decide Plaintiff's cross-motion pertaining to that claim.

FACTUAL BACKGROUND

Unless otherwise noted, the following facts are taken from the Complaint, and from other documents which may be considered on a Rule 12(b)(6) motion.[1]

At all relevant times, Plaintiff's daughter, E.C., was a fourteen-year-old freshman student at defendant Honeoye Falls-Lima Central School District ("the School").  On October 1, 2019, a student notified School officials that he had found a message, written inside a toilet stall in a unisex student bathroom, which stated, "im gonna BOMB the school, just you wait."  The School examined surveillance camera footage taken outside the bathroom at around the time the student claimed to have discovered the writing, which showed that E.C. had recently been in the bathroom.  Two school staff members also opined that the handwriting in the bathroom resembled E.C.'s handwriting.  Consequently, the School concluded that E.C. had written the threat.  The School Principal, David Roth ("Roth"), notified E.C. and her parents that E.C. was being suspended, initially for five days, beginning on October 7, 2019.[2]  At that same time, Roth expressly acknowledged in writing that E.C. had denied making the threat.[3]

On or about October 8, 2019, the School Superintendent, defendant Gene

---

[1] As discussed further below, in addition to the Complaint, the Court may consider documents that are "integral" to the Complaint, provided that the relevance and authenticity of the documents are not genuinely disputed. *See, e.g., Clark v. Hanley*, 89 F.4th 78 (2d Cir. 2023).

[2] The Complaint asserts that Superintendent Mancuso provided this notice, Complaint at ¶ 13, but the actual document was from Roth, not Mancuso. ECF No. 15-4.  A court is not required to accept as true allegations in a complaint that are contradicted by the pleading itself or by documents upon which the pleading is based. Perry v. NYSARC, Inc., 424 F. App'x 23, 25 (2d Cir. 2011) ("In conducting this ["plausibility"] inquiry, the court must generally accept as true all of the factual assertions in the complaint. However, there is a narrow exception to this rule for factual assertions that are contradicted by the complaint itself, by documents upon which the pleadings rely, or by facts of which the court may take judicial notice.") (citations omitted).

[3] ECF No. 15-5 at p. 1.

Mancuso ("Mancuso"), gave E.C. and her parents written notice of a hearing, to be held on October 16, 2019, concerning a possible long-term disciplinary suspension. (ECF No. 15-6).  The notice advised E.C. and her parents of the disciplinary charge, which was "violent conduct and conduct which endangered the health, welfare, safety and/or morals of others,"[4] and set forth various rights that they would have at the hearing, including the right to be represented by counsel, the right to have the hearing officer issue subpoenas, the right to question witnesses, and the right to appeal any decision by the Superintendent to the Board of Education. *Id*.

The School selected defendant James Kane ("Kane"), an employee of non-defendant Monroe 2-Orleans Board of Cooperative Educational Services ("BOCES"), to act as an impartial hearing officer at the hearing.  At the hearing, as evidence that E.C. had made the threat, the School relied on testimony from three students, none of whom actually observed who had written the threat, concerning the circumstances surrounding the discovery of the threat, and on testimony from two staff members who opined that E.C.'s handwriting was similar to the written threat.  According to Plaintiff's Complaint in this action, the School used this evidence even though the aforementioned video surveillance footage was inconsistent with the student witnesses' testimony, and even though the testifying staff members had no training or experience in analyzing or comparing handwriting samples.  Also testifying at the hearing were E.C., who again denied making the bomb threat, and another student, who corroborated E.C.'s testimony.

---

[4] ECF No. 15-6 at p. 1.

At the conclusion of the hearing, Kane found that the School had proven the charge against E.C. "by competent and substantial evidence," though he did not make any particular factual findings, and recommended that E.C. receive a longer-term suspension. Mancuso accepted Kane's recommendation, found E.C. guilty of writing the threatening message, and extended E.C.'s out-of-school suspension until January 26, 2020.

E.C. appealed Mancuso's determination to the defendant Board of Education ("the Board").   On December 5, 2019, the Board held an Appeal Process Meeting.   The Complaint in this action alleges, "upon information and belief," that during this meeting, Mancuso "stated to the Board, in sum and substance, that [E.C.] had 'confessed' to him that she had written the [threat]."  The Complaint contends, however, that such statement by Mancuso was false, since E.C. neither spoke to Mancuso nor admitted writing the threat.

On or about December 17, 2019, the Board voted to deny E.C.'s appeal and upheld the suspension imposed by Mancuso.   The Complaint alleges, in this regard, "upon information and belief," that the Board improperly relied on Mancuso's alleged false, "extra-judicial" statement that E.C. had confessed to making the threat.  As a result of the Board's determination, E.C. remained suspended from school for 111 days, between October 17, 2019, and January 26, 2020.

E.C. appealed the suspension to the New York State Commissioner of Education ("the Commissioner"), who, almost a year later, on October 7, 2020, reversed the Board's determination and expunged E.C.'s record.  The Commissioner's written decision is not part of the court record.  However, Plaintiff's Complaint asserts that the Commissioner

"admonished" Kane for having failed to make specific findings of fact, and directed him in the future to "ensure as trier of fact he render[ed] factual findings consistent with his duty under the Education Law."

On February 18, 2022, Plaintiff commenced this action.  The Complaint purports to state the following causes of action: 1) a claim against Kane for violation of E.C.'s right to a public education, without due process of law, in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution; 2) a claim against Mancuso for violation of E.C.'s right to a public education, without due process of law, in violation of the Fifth and Fourteenth Amendments; 3) a claim against the Board for violation of E.C.'s right to a public education, without due process of law, in violation of the Fifth and Fourteenth Amendments; 4) a claim against all defendants for violation of E.C.'s "right to good name and reputation," without due process of law, in violation of the Fifth and Fourteenth Amendments; and 5) a claim against Mancuso for defamation under New York State law.

More specifically, the First Cause of Action purports to state a procedural due process claim and a substantive due process claim against Kane, based on his alleged failure, as the hearing officer, to make factual findings as required by New York State Education Law.  The Second Cause of Action purports to state a procedural due process claim and a substantive due process claim against Mancuso, based on his imposition of the long-term suspension and his alleged false statement to the Board that E.C. had admitted writing the threat.  The Third Cause of Action purports to state a procedural due process claim and a substantive due process claim against the Board, based on its denial of E.C.'s appeal and its alleged reliance on Mancuso's false, outside-the-record statement

that E.C. had confessed to making the threat.  The Fourth Cause of Action purports to state a "stigma-plus" due process claim against Kane, Mancuso, and the Board, based on their alleged damage to E.C.'s reputation resulting from her alleged wrongful suspension.  And, finally, the Fifth Cause of Action purports to state a claim for *slander per se* against Mancuso under New York State law, based on his alleged false statement to the Board that E.C. had admitted to the crime of making a bomb threat.

Kane filed a Motion to Dismiss the Complaint (ECF No. 13) for failure to state a claim, pursuant to Rule 12(b)(6).  Kane admits that when the Commissioner reversed the Board's determination and expunged E.C.'s suspension, the Commissioner admonished Kane that, "as trier of fact, [he] was required 'to render factual findings consistent with his duty under the Education Law.'"  However, Kane argues, first, that as a hearing officer, he is entitled to absolute quasi-judicial immunity from liability arising out of his actions at the hearing, and, alternatively, that he would at least be entitled to qualified immunity since he did not violate any clearly-established right of E.C. of which a reasonable hearing officer would have known.  Additionally, Kane contends that the Complaint fails to state a substantive due process violation, since it does not allege that he did anything egregious, outrageous, or shocking to the conscience.  Further, Kane maintains that the Complaint also fails to allege a procedural due process violation, since E.C. was given notice and an opportunity to be heard at the hearing, and an opportunity to appeal the hearing decision.  For that same reason, Kane argues that the Complaint fails to state a "stigma plus" due process claim.  Finally, Kane contends that insofar as the Complaint attempts to sue him under Section 1983 in his official capacity, it is a claim against his

governmental employer, Monroe 2-Orleans BOCES, which fails to allege *Monell* liability.

Mancuso and the Board ("District Defendants") also filed a motion to dismiss the Complaint, pursuant to Rule 12(b)(1)&(6).[5]  District Defendants contend that the Court lacks subject-matter jurisdiction over Plaintiff's state-law defamation claim, since Plaintiff never filed a Notice of Claim concerning that alleged tort, as required by New York Education Law § 3813, and also since the Complaint does not allege Plaintiff's compliance with such requirement.  District Defendants further maintain that the Complaint fails to state any actionable claims.  More specifically, the motion alleges that the procedural due process claims fail, since E.C. was afforded the necessary due process at the hearing and appeal, and since she had an adequate post-deprivation remedy available to her in the form of an Article 78 Proceeding; that the "stigma plus" claim is insufficiently pled for multiple reasons, including that Plaintiff cannot demonstrate an underlying procedural due process violation;[6] and that the substantive due process claims are deficient since the Complaint does not allege any egregious, conscience-shocking governmental conduct.  District Defendants further maintain that the claim against the Board fails to allege any municipal policy or practice to support *Monell* liability, and that any claim against Mancuso in his official capacity is redundant of the claims

---

[5] Regarding their Rule 12(b)(6) application, District Defendants maintain that the Court may properly consider three documents that, while not attached to the Complaint, were mentioned therein, and are integral to the pleading, namely, two notices sent to Plaintiff by the School on October 4, 2019, and another notice sent on October 8, 2019.

[6] District Defendants also maintain that the Complaint does not claim that the alleged defamatory statement (by Mancuso) was ever made public, *see, e.g.*, District Defendant's Memo of Law, ECF No. 15-7 at p. 15 ("A statement made in private, such that it will not affect a person's reputation, does not supply the 'stigma' element for such a claim."), and that Mancuso is entitled to the "common interest privilege" concerning any such defamatory statement to the Board.

against the Board.   Lastly, District Defendants contend that even if Plaintiff could demonstrate a due process violation, Mancuso would be entitled to qualified immunity since a reasonable superintendent in his position would not have believed he was violating Plaintiff's rights.

Plaintiff opposes most aspects of Defendants' motions.  More specifically, Plaintiff alleges, first, that she has adequately pleaded a procedural due process claim by alleging that during the long-term suspension hearing, Kane failed to make sufficient findings of fact as required by New York Education Law § 3214(3)(c)(1).[7]  Plaintiff also argues that Mancuso committed a procedural due process violation by suspending E.C. in the absence of any such findings by Kane, in violation of Education Law § 3214.[8]  Plaintiff further alleges that she has adequately pleaded a substantive due process claim based on Mancuso's alleged false statement to the Board, which she describes as "an act that shocked the conscience and undermined the fairness of the process afforded [to E.C.]."[9] Plaintiff seems to also argue that the Board similarly violated her procedural and substantive due process rights by *considering* the alleged false statement by Mancuso, rather than relying solely on evidence that was admitted at the hearing.[10]  Plaintiff further

---

[7] *See*, Plaintiff's Memo of Law, ECF No. 20-6 at p. 9 ("Defendant Kane failed to follow the procedures and rules set forth in New York's Education Law.  After a hearing fraught with inconsistent eyewitness testimony and handwriting comparison performed by lay persons, the hearing officer failed to render any factual findings, simply concluding that the district sustained the charges.").

[8] Pl. Memo of Law, ECF No. 20-6 at p. 11 ("Per NY Education Law § 3214(3)(c)(1) Mancuso must adopt the hearing officer's findings of fact before ordering a suspension.  This was not done, as Kane did not actually make any factual findings.").

[9] Pl. Memo of Law, ECF No. 20-6, at p. 9 (Plaintiff essentially contends that Mancuso's alleged false statement to the Board made a sham of the hearing process and eviscerated the procedural protections that she was ostensibly provided.)

[10] *See*, Pl. Memo of Law, ECF No. 20-6, at p. 10 ("[T]he Board's actions were tantamount to a Judge presiding over a criminal bench trial considering an off-record comment by an investigator that the

argues that Defendants should not be entitled to qualified immunity, since dismissals on that ground are disfavored at the pleading stage, and since facts establishing such immunity do not appear on the face of the Complaint.  Rather, Plaintiff contends that the Complaint shows that Mancuso could not have reasonably believed that it was permissible for him to make a false statement about E.C. to the Board.  Plaintiff also contends that Kane is not entitled to absolute quasi-judicial immunity, since the U.S. Supreme Court has "held that school administrators and board of education members enjoy only qualified immunity from personal liability in civil actions for damages resulting from the wrongful deprivation of a student's rights,"[11] though Kane was neither a school administrator nor a board member.  Plaintiff further asserts that she has stated a *Monell* claim against the Board, insofar as the Board considered Mancuso's alleged false statement in denying E.C.'s appeal.[12]

Plaintiff, however, now concedes that the official capacity claim against Mancuso should be dismissed. ECF No. 20-6 at p. 16.  Additionally, Plaintiff's opposition papers do not contest or mention Kane's argument for dismissal of the claim against him in his official capacity, and the Court therefore considers that claim to be abandoned.

Plaintiff also filed a cross-motion for leave to file a late notice of claim regarding her state-law defamation cause of action.  In that regard, Plaintiff admits that her original notice of claim, filed in December 2019, did not reference Mancuso's alleged defamatory

---

defendant had confessed – when no such confession was introduced at the trial.  . . .  The Board's actions in this case fatally undermined the process afforded [E.C.] in a similar way.").
[11] Pl. Memo of Law, ECF No. 20-6 at p. 12.
[12] Pl. Memo of Law, ECF No. 20-6 at p. 13 ("The Board thus acted unlawfully when it considered evidence which did not appear in the record before it.").

statement, and that the statutory period for filing such a claim has expired.  Plaintiff, though, contends that she should be allowed to file a late notice of claim, since she and her attorney only became aware of the alleged defamatory statement in November 2021, after her attorney spoke with an unidentified "potential witness."  Although, Plaintiff did not thereafter file an amended notice of claim.  Plaintiff contends, however, that this Court has the ability to allow her to file a late notice of claim.  Alternatively, Plaintiff asks the Court to reserve decision on the aspect of Defendants' motions directed at the tort claim, "pending resolution of the issue in State Court."

The Court has thoroughly considered the parties' submissions, including ECF Nos. 13, 15, 20, 22 & 23.

## RULE 12(b)(6) STANDARD

Defendants have filed motions to dismiss the Complaint pursuant to Rule 12(b)(6), and the legal standards applicable to such applications are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and internal quotation marks omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint, [13] that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

---

[13]The Court must accept the plausible factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), cert. den. 531 U.S. 1052, 121 S.Ct. 657 (2000).

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Angiulo v. Cty. of Westchester*, No. 11-CV-7823 CS, 2012 WL 5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp.3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal's* pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.'") (quoting *Iqbal*).

As already mentioned, it is clearly settled that, "[i]n ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint." *McCray v. Lee*, 963 F.3d 110, 116 (2d Cir. 2020) (citations and internal quotation marks omitted).   However, it is equally clear that not every allegation made "upon information and belief" is entitled to be accepted as true:

> [W]hile a plaintiff may make allegations on information and belief, those allegations will be sufficient to support a claim for relief only when the factual matter pled supports a plausible inference of culpability. . . . A plaintiff may satisfy the plausibility standard by pleading facts upon information and belief, but a plaintiff cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory. Those magic words will only make otherwise unsupported claims plausible when the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.

*Evergreen E. Coop. v. Whole Foods Mkt.*, Inc., No. 21-2827-CV, 2023 WL 545075, at *1-2 (2d Cir. Jan. 27, 2023)  (citations omitted); *see also, United Prob. Officers Ass'n v. City of New York*, No. 21-CV-0218 (RA), 2022 WL 875864, at *9 (S.D.N.Y. Mar. 24, 2022) ("[T]he bare allegation that women of color are "paid less" than their white male counterparts in the same titles is a conclusory assertion that the Court need not accept as true.  Again, even if pattern-or-practice plaintiffs cannot allege the precise amount of their coworkers' salar[ies], they should at least be able to allege the facts that form the basis for their belief that the coworkers are paid more.") (citations and internal quotation marks omitted); *Bright Kids NYC Inc. v. Kelly*, No. 19-CV-1175 (JMF), 2020 WL 6891814, at *4 (S.D.N.Y. Nov. 24, 2020) ("The Amended Complaint also alleges, "[u]pon information and belief," that Adams "knew that the Proprietary Contact Info was stolen." But to pass muster, an allegation upon information and belief must be accompanied by a statement of the facts upon which the belief is founded, and cannot rest on pure conjecture and speculation.  Here, the allegation of Adams's knowledge falls far short.") (citations and internal quotation marks omitted).

SECTION 1983 STANDARDS

Plaintiff's first four causes of action allege federal constitutional claims under 42 U.S.C. § 1983.  The legal principles generally applicable to Section 1983 claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right.

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir.2004) (citation omitted).  Put simply, to plead a plausible claim under Section 1983, a plaintiff must allege that she was deprived of a constitutional right by a person acting under color of state law. *See, Oparaji v. City of New York*, 152 F.3d 920 (2d Cir. 1998) ("To state a claim under § 1983, a plaintiff must allege that the defendants, acting under color of state law, deprived him of a constitutional right. *Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982).").

"[Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.  . . .  [For example, i]n addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right." *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S. Ct. 1865, 1870–71, 104 L. Ed. 2d 443 (1989) (citations omitted).

"A defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority.  Rather, the personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (citations and internal quotation marks omitted), as amended (Feb. 24, 2016).

Additionally, to sue a municipal defendant under Section 1983 for a constitutional violation committed by a municipal employee, a plaintiff must allege a basis for "*Monell*" liability:

> To plead a *Monell* claim, a plaintiff must allege [(1)] the existence of a formal policy which is officially endorsed by the municipality, or [(2)] a practice so persistent and widespread that it constitutes a custom or usage of which supervisory authorities must have been aware, or [(3)] that a municipal custom, policy, or usage can be inferred from evidence of deliberate indifference of supervisory officials to such abuses.

*Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x at 13.  "The inference that a [municipal] policy existed may . . . be drawn from circumstantial proof[.]" *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *see also, Staten v. Vill. of Monticello*, No. 14-CV-4766 (KMK), 2016 WL 7235796, at *6 (S.D.N.Y. Dec. 13, 2016) ("At the motion to dismiss stage, Plaintiffs need not prove these elements, but they are required to plead them sufficiently to make out a plausible claim for relief. To do so, Plaintiffs must allege facts tending to support, at least circumstantially, an inference that a municipal policy or custom exists.") (Citation and internal quotation marks omitted).

## DISCUSSION

Plaintiff's first three causes of action allege that Defendants deprived E.C. of her property right to a public education without due process, in violation of her procedural and substantive due process rights, under the Fifth and Fourteenth Amendments, in connection with the school disciplinary proceedings.  Regarding the procedural due process claims, the relevant legal principles have been clearly stated as follows:

> "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property without due process of law, and 'those who seek to invoke its procedural protection must establish that one of these interests is at stake.'" *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (quoting *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012)) (other citation omitted). "'[S]tandard analysis under that provision proceeds in two steps: We first ask whether there exists a liberty or property interest

of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient.'" *Id*. (quoting *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S.Ct. 859, 178 L.Ed. 2d 732 (2011) ).

"Protected property interests 'are not created by the Constitution.'" *Hughes v. City of N.Y.*, 197 F.Supp.3d 467, 474 (E.D.N.Y. 2016) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed. 2d 548 (1972)). "Instead, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Id*. (quotation and other citation omitted); *see also Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002) ). The Second Circuit has found that New York Education Law § 3202 creates a property interest in a public education. *See Handberry v. Thompson*, 446 F.3d 335, 353 (2d Cir. 2006) (citations omitted). As such, a student . . . has a protected property interest in his education, meaning that he c[annot be] deprived of that right without due process of law. *See Cohn v. New Paltz Cent. Sch. Dist.*, 363 F.Supp.2d 421, 432 (N.D.N.Y. 2005) (citation omitted).

\*\*\*

"In *Goss v. Lopez*, 419 U.S. 565, 573, 95 S.Ct. 729, 42 L.Ed. 2d 725 (1975), the Supreme Court held that students facing a ten-day suspension must be given some kind of notice and afforded some type of hearing." *Cohn*, 363 F.Supp.2d at 433. "The Court stated that the hearing could be held immediately following the incident and be informal." *Id*. "However, the Supreme Court did caution 'suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures.'" *Id*. (quoting *Goss*, 419 U.S. at 584, 95 S.Ct. 729).

"Constitutionally, due process 'requires that individuals have "notice and opportunity for a hearing appropriate to the nature of the case" prior to a deprivation of life, liberty, or property.'" *Cohn*, 363 F.Supp.2d at 433 (quoting *Rosa R. v. Connelly*, 889 F.2d 435, 438 (2d Cir. 1989)) (other citation omitted). "'Notice must be reasonably calculated, under all the circumstances, to appraise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id*. (quoting *Rosa R.*, 889 F.2d at 439) (other quotation omitted).

Moreover, it is well-established in the context of disciplinary proceedings,

such as those at issue here, that post-discipline due process provides sufficient due process to satisfy the requirements of the Fourteenth Amendment. *See Cohn*, 363 F.Supp.2d at 433. As such, the availability of an adequate, post-deprivation hearing will preclude a procedural due process claim. *See id*. (citations omitted); *see also Storey v. Morris*, No. 7:16-cv-206, 2017 WL 933212, *3 (N.D.N.Y. Feb. 1, 2017) (citing cases finding that the plaintiff failed to plausibly allege a procedural due process claim because of the availability of an Article 78 proceeding); *Richardson v. Capt. Van Dusen*, 833 F.Supp. 146, 153 (N.D.N.Y. 1993) ("[E]ven when assuming that the Superintendent's Hearing was conducted in [a] manner that deprived plaintiff of his due process rights, the process afforded the plaintiff in the Article 78 proceeding cured any defect in the original hearing").

*Horton v. Westling*, 284 F. Supp. 3d 213, 219–20 (N.D.N.Y. 2018), aff'd, 765 F. App'x 531 (2d Cir. 2019).

Before applying these principles in the instant case, the Court finds that the claims against Kane in his individual capacity are barred by the doctrine of absolute quasi-judicial immunity.  Courts in this Circuit have long applied absolute immunity not just to judges, but also to administrative officials who acted in a quasi-judicial nature:

It is well-settled that judges are entitled to absolute immunity from liability for acts performed in their judicial capacities. *See, e.g., Mireles v. Waco*, 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Stump v. Sparkman*, 435 U.S. 349, 355–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Tucker v. Outwater*, 118 F.3d 930, 932–33 (2d Cir.1997). "Judicial immunity is necessary because 'principled and fearless decision-making' will be compromised if a judge 'fear[s] that unsatisfied litigants may hound him with litigation charging malice or corruption.'" *Vasile v. Dean Witter Reynolds, Inc.*, 20 F.Supp.2d 465, 488–89 (E.D.N.Y.1998) (quoting *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)). Judicial immunity may be overcome in only two instances: (1) when the actions in question were not taken in the judge's judicial capacity; and (2) when the actions, "though judicial in nature, [were] taken in the complete absence of all

jurisdiction." *Mireles*, 502 U.S. at 11–12, 112 S.Ct. 286 (citations omitted).

"The doctrine of quasi-judicial immunity extends immunity to administrative officials performing discretionary acts of a judicial nature," *DeMerchant v. Springfield Sch. Dist.*, No. 1:05 CV 316, 2007 WL 495240, at *3 (D.Vt. Feb. 9, 2007) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985); *Butz v. Economou*, 438 U.S. 478, 513, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir.1988)), and "bars claims against administrative law judges and hearing examiners performing judicial functions[.]" *Sassower v. Mangano*, 927 F.Supp. 113, 120 (S.D.N.Y.1996) (citation omitted), *aff'd*, 122 F.3d 1057 (2d Cir.1997) (unpublished); *see also DeMerchant*, 2007 WL 495240, at *3 ("Indeed, many courts have held that state hearing officers who exercise independent quasi-judicial powers are entitled to absolute judicial immunity.") (citing cases).

*Wetzel v. Town of Orangetown*, No. 06 CIV. 6117 SCR, 2010 WL 743039, at *15 (S.D.N.Y. Mar. 2, 2010) (footnote omitted).[14]

Here, the Complaint does not allege that Kane's actions were non-judicial, or that Kane acted in the complete absence of all jurisdiction.  Rather, the Complaint alleges that when acting in his quasi-judicial capacity as a hearing officer at the disciplinary hearing, Kane committed a legal error that contributed to an adverse finding being made against E.C. by Mancuso, following the disciplinary hearing.  Specifically, the pleading asserts that Kane erred by failing to make specific findings of fact.  Consequently, insofar as Kane

---

[14] *See also, id.* at n. 15 ("Whether non-judicial officers are entitled to quasi-judicial absolute immunity depends upon the "functional comparability" of their judgments to those of a judge. *See Imbler v. Pachtman*, 424 U.S. 409, 423 n. 20, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Functional comparability is determined by taking into consideration the following six factors: "(a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal." *Cleavinger v. Saxner*, 474 U.S. 193, 202, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (citing *Butz v. Economou*, 438 U.S. 478, 512, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)).").

is sued in his individual capacity, he is entitled to absolute quasi-judicial immunity as to all claims against him, since he is being sued for his quasi-judicial actions as an administrative hearing officer. *See, e.g., J.E. ex rel. Edwards v. Ctr. Moriches Union Free Sch. Dist.*, 898 F. Supp. 2d 516, 554, n. 25 (E.D.N.Y. 2012) ("Defendant Nelson was not a school employee but was the independent hearing officer who conducted the Superintendent's hearing for the infant plaintiffs in this case. Nelson presided over the disciplinary hearings, heard arguments and testimony, and issued a decision in the form of a recommendation to the Superintendent.  Having acted in this quasi-judicial role, Nelson is entitled to quasi-judicial immunity from plaintiffs' federal claims against him in his individual capacity.") (collecting cases; citation to record omitted).

However, even without regard to quasi-judicial immunity, the Complaint fails to state a procedural due process claim against Kane, Mancuso, or the Board.  In that regard, it is clear that E.C. had a property right to a public education.  However, while the Complaint alleges that Defendants denied E.C. that right without procedural due process, it is undisputed that E.C. was given notice of the disciplinary charge against her and an opportunity to be heard at a hearing, and that the finding of guilt by Mancuso, which was upheld by the Board, was supported by some evidence.  More importantly, it is undisputed that E.C. had the ability to appeal the Board's determination to the Commissioner of Education, which appeal she won, and that even if she had lost that appeal, she could have filed an Article 78 Proceeding in state court.

Since New York State provided Plaintiff an adequate post-deprivation remedy, [15] namely, an Article 78 Proceeding, then as a matter of law there was no procedural due process violation, even assuming that everything in the Complaint is true. *See, Horton v. Westling*, 765 F. App'x 531, 533 (2d Cir. 2019) ("This Court has often acknowledged that Article 78 proceedings provide an adequate state remedy for procedurally improper agency decisions. . . . While Horton did not actually file an Article 78 action, he had a meaningful opportunity to challenge his treatment and so was not deprived of due process simply because he failed to avail himself of the opportunity.") (citation and internal quotation marks omitted); *see also, Potrzeba v. Sherburne-Earlville High Sch. through Sherburne-Earlville Cent. Sch. Dist. Bd. of Educ.*, No. 3:23-CV-191 (BKS/ML), 2023 WL 8827178, at *10 (N.D.N.Y. Dec. 21, 2023) ("It is well-settled that, "in certain circumstances, ... [a deprivation] will not offend the constitutional guarantee of due process[ ] provided there is sufficient post[-] deprivation process." *Catanzaro v. Weiden*, 188 F.3d 56, 61 (2d Cir. 1999) (citing *Parratt v. Taylor*, 451 U.S. 527, 538, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)).  In such circumstances, where a state provides a post-deprivation remedy, that remedy constitutes due process, and no due process violation can arise. *See Parratt*, 451 U.S. at 538, 101 S.Ct. 1908.  In the school-suspension context in New York, this post-deprivation remedy is an Article 78 proceeding.").

---

[15] The Complaint does not allege or imply that any post-deprivation remedy would have been inadequate.

Consequently, the procedural due process claim is dismissed as against Kane and Mancuso, in their individual capacities, and as against the Board.  The procedural due process claim is also dismissed as against Kane and Mancuso in their official capacities, since the Court has already determined that the Complaint fails to plead any underlying procedural due process violation.[16] *See, Dorsey v. Gannon*, No. 22-2735, 2024 WL 1338772, at *3 (2d Cir. Mar. 29, 2024) ("[O]ur caselaw is clear that there can be no *Monell* liability where there has not been an underlying constitutional violation.") (citation omitted); *see also, Valdiviezo v. Boyer*, 752 F. App'x 29, 31 (2d Cir. 2018) ("Municipalities, and individuals sued in their official capacity, are liable under § 1983 only if the challenged conduct was 'pursuant to a municipal policy or custom,' *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004) (citing *Monell v. Dep't of Soc. Serv. of the City of N.Y.*, 436 U.S. 658, 692-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ), or caused by a 'failure to train[.]'").

For the same reason that the Complaint fails to state an actionable procedural due process claim concerning the right to a public education, Plaintiff's "stigma-plus" procedural due process claim also necessarily fails.  In this regard, Plaintiff's Fourth Cause of Action alleges that Defendants deprived E.C. of her "constitutionally protected right to her good name and reputation," "without due process of law."  Again, however, E.C. had an adequate post-deprivation procedure available to her, in the form of an Article

---

[16] As noted earlier, Plaintiff now concedes that the official capacity claim against Mancuso should be dismissed. ECF No. 20-6 at p. 16.  Plaintiff did not oppose or mention Kane's argument for dismissal of the claim against him in his official capacity, and the Court therefore also considers that claim to be abandoned.

78 Proceeding, which is fatal to her "stigma plus" claim.[17] *See, Xu v. City of New York*,
No. 21-1059-CV, 2023 WL 4285031, at *2 (2d Cir. June 30, 2023) ("Even if the stigma-
plus claim were timely, however, it fails on the merits because Xu could have pursued an
Article 78 proceeding. With respect to stigma-plus claims, '[a]n Article 78 proceeding
provides the requisite post-deprivation process—even if [a plaintiff] failed to pursue it.'
*Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 121 (2d Cir. 2011).  And we have held
that 'the availability of adequate process defeats a stigma-plus claim.' *Segal v. City of
New York*, 459 F.3d 207, 213 (2d Cir. 2006)."); *see also, McHerron v. Burnt Hills - Ballston
Lake Cent. Sch. Dist.*, 778 F. App'x 54, 55 (2d Cir. 2019) ("[W]e conclude that an Article
78 proceeding provided by New York law is a sufficient post-deprivation remedy, which
defeats Plaintiffs' 'stigma-plus' claim.").

The Complaint also fails to state an actionable substantive due process claim
against Kane, Mancuso, or the Board.  In that regard, the general requirements for a
substantive due process claim are clear:

> "For a substantive due process claim to survive a Rule 12[(b)(6)] dismissal
> motion, it must allege governmental conduct that is so egregious, so
> outrageous, that it may fairly be said to shock the contemporary
> conscience." *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005). This test "is
> necessarily imprecise," but it is clear that "whether executive action shocks
> the conscience depends on the state of mind of the government actor and
> the context in which the action was taken." *O'Connor v. Pierson*, 426 F.3d
> 187, 203 (2d Cir. 2005). Intentional conduct "unjustifiable by any
> government interest is the sort of official action most likely to rise to the
> conscience-shocking level." *Cty. of Sacramento v. Lewis*, 523 U.S. 833,
> 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

---

[17] Plaintiff's memo of law in opposition to Defendants' motions (ECF No. 20-6) does not acknowledge this
legal principle.

*Horton v. Westling*, 765 F. App'x  at 533–34.  Importantly, however, substantive due process protects only a limited number of rights that are truly "fundamental." *See, Washington v. Glucksberg*, 521 U.S. 702, 720–21, 117 S. Ct. 2258, 2268, 138 L. Ed. 2d 772 (1997) ("Our established method of substantive-due-process analysis has two primary features: First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.  Second, we have required in substantive-due-process cases a careful description of the asserted fundamental liberty interest.") (citations and internal quotation marks omitted); *see also, Torregrossa v. Bd. of Trustees of Univ. of Illinois*, 175 F.3d 1021 (7th Cir. 1999) ("The Supreme Court has held that substantive review is available only when a state treads on rights so fundamental that no amount of process can justify their abridgment. *See Washington v. Glucksberg*, 521 U.S. 702, 719-21 (1997).").

Here, Plaintiff's substantive due process claims each contend that Defendants deprived E.C. of the same right, namely, "a constitutionally protected property right to a public school education."  However, the Second Circuit has clearly indicated that the right to a public education is not a fundamental right that is protected by substantive due process:

> Plaintiffs contend that the ban on aversive interventions deprives these children of substantive due process. Plaintiffs cannot prevail on such a claim because there is no substantive due process right to public education.

> "[T]he Due Process Clause of the Fourteenth Amendment embodies a substantive component that protects against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 460 (2d Cir.1996) (quoting *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). In examining whether a government rule or regulation infringes a substantive due process right, "the first step is to determine whether the asserted right is 'fundamental,'"—i.e., "implicit in the concept of ordered liberty, or deeply rooted in this Nation's history and tradition," *Leebaert v. Harrington*, 332 F.3d 134, 140 (2d Cir. 2003) (internal quotation marks omitted). Where the right infringed is fundamental, the regulation must be narrowly tailored to serve a compelling government interest. *Immediato*, 73 F.3d at 460. Where the right infringed is not fundamental, "the governmental regulation need only be reasonably related to a legitimate state objective." *Id*. at 461.
>
> The right to public education is not fundamental. *Handberry v. Thompson*, 446 F.3d 335, 352 (2d Cir.2006) (citing *Plyler v. Doe*, 457 U.S. 202, 221, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973)).

*Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 217–18 (2d Cir. 2012); *see also, Goe v. Zucker*, 43 F.4th 19, 31 (2d Cir. 2022) ("While the right to an education is an important right, it is not a 'fundamental right' such as to require strict scrutiny review."), *cert. denied sub nom. Goe v. McDonald*, 143 S. Ct. 1020, 215 L. Ed. 2d 188 (2023); *Puccinelli v. S. Connecticut State Univ*., No. 3:21-CV-00763 (SVN), 2022 WL 6770967, at *8 (D. Conn. Oct. 11, 2022) ("[S]tudents "generally have a 'legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause,'" *Donohue v. Hochul*, No. 21-CV-8463 (JPO), 2022 WL 673636, at *9 (S.D.N.Y. Mar. 7, 2022).  The right to public education, however, "is not fundamental" and, as a result, it is not protected by substantive due process. *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202,

217 (2d Cir. 2012)."); *Jones v. Cnty. of Westchester*, No. 14-CV-7635 (NSR), 2023 WL 6038529, at *7 (S.D.N.Y. Sept. 15, 2023) ("It has been well established that the right to public education is not fundamental and accordingly, there is no substantive due process right to public education.") (collecting cases, internal quotation marks omitted); *Martinetti v. Mangan*, No. 17-CV-5484 (KMK), 2019 WL 1255955, at *7, n. 6 (S.D.N.Y. Mar. 19, 2019) ("The Second Circuit has held that 'the right to public education is not fundamental," and that there is therefore "no substantive due process right to public education.' *Bryant v. N.Y.S. Educ. Dep't*, 692 F.3d 202, 217 (2d Cir. 2012) (citations omitted). Therefore, to the extent Plaintiff's due process claims rely on deprivation of a free and appropriate public education, Plaintiff is limited to asserting a procedural due process claim.").

In the instant case, Plaintiff's substantive due process claims are based on the alleged deprivation of the right to a public education, which is not a fundamental right, and, consequently, her substantive due process claims are dismissed.  Moreover, even assuming *arguendo* that the right to a public education was a fundamental right, the Complaint does not, in any event, plausibly allege that Kane or the Board engaged in any intentional, unjustifiable, conscience-shocking conduct that would support a substantive due process claim.  More specifically, the pleading does not allege that Kane intentionally did anything wrong, and the allegation concerning the Board, made only upon information and belief, that the Board denied E.C.'s appeal "based in whole or in part on Mancuso's false and outside the record statement," need not be accepted as true, since it is a bald

and speculative assertion.[18]

Having now determined that Plaintiff's federal claims must all be dismissed, the only remaining items are Plaintiff's state-law defamation claim and her cross-motion for leave to file a late and amended notice of claim under New York General Municipal Law § 50-e(5).  However, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the remaining claim.  In a similar situation, another Judge in this District recently stated the applicable principles concerning such a decision as follows:

> Having disposed of all federal claims falling within this Court's original jurisdiction, this Court finds it appropriate to decline to exercise supplemental jurisdiction over Plaintiff's claims regarding violations of New York State law and Plaintiff's Motion for Leave to File a Late Notice of Claim. *See* 28 U.S.C. § 1367(c)(3).  The United States Supreme Court has instructed that courts should ordinarily decline to exercise supplemental jurisdiction in the absence of federal claims. *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (noting that in the usual case where all federal claims are eliminated before trial, the relevant factors informing the decision of whether to exercise supplemental jurisdiction will "point towards declining to exercise jurisdiction over the remaining state-law claims"); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well.").

> The Second Circuit shares this view: where "federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and

---

[18] It would be a closer call as to Mancuso, since the Complaint alleges that he intentionally lied to the Board in order to improperly influence the Board's consideration of E.C.'s appeal.  Although, even that allegation might not support a plausible substantive due process claim against Mancuso, since it is a bald assertion, made only "upon information and belief," as to what Mancuso said "in sum and substance," that arguably not have to be accepted as true, though the Court need not decide that question.

comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir.2003); *see also Marcus v. AT & T Corp.*, 138 F.3d 46, 57 (2d Cir.1998) ("In general, where the federal claims are dismissed before trial the state claims should be dismissed as well.")

Moreover, comity suggests that this case is better litigated in the New York State Supreme Court, where the action can be resolved by the state court under state law. The resolution of Plaintiff's motion for Leave to File a Late Notice of Claim, in particular, could have a profound effect on the outcome of the case, and as such it would be improper for this Court to resolve it. *See Levin v. Commerce Energy, Inc.*, —— U.S. ——, 130 S.Ct. 2323, 176 L.Ed.2d 1131 (2010) (defining comity as a "proper respect for state functions").

Plaintiff's state court claims will be timely so long as he files them within 30 days from the date of this decision. See 28 U.S.C. § 1367(d).  This tolling provision is meant to "prevent the limitations period on such supplemental claims from expiring while the plaintiff was fruitlessly pursuing them in federal court" and to "promote[ ] fair and efficient operation of the federal courts." *Jinks v. Richland County*, 538 U.S. 456, 459, 463, 123 S.Ct. 1667, 1669, 155 L.Ed.2d 631 (2003) (upholding the constitutionality of § 1367(d)).

*Foley v. City of Buffalo*, No. 06-CV-49S, 2011 WL 3176455, at *7–8 (W.D.N.Y. July 27, 2011) (footnote omitted).   For these same reasons, this Court declines to exercise supplemental jurisdiction over Plaintiff's defamation claim or to address the pending cross-motion.  Plaintiff's Fifth Cause of Action is therefore dismissed without prejudice.

## CONCLUSION

For the reasons discussed above Defendants' motions to dismiss (ECF Nos. 13 & 15) are granted as to all federal claims in the Complaint.   Pursuant to 28 U.S.C. § 1367(c)(3) the Court declines to exercise supplemental jurisdiction over the state-law defamation claim, and that claim is dismissed without prejudice.   There Court therefore

does not make any ruling concerning Plaintiff's cross-motion for leave to file a late notice of claim under Section 50-e(5) of New York General Municipal Law concerning the state-law defamation claim (ECF No. 20).  The Clerk is directed to close this action.

      SO ORDERED.

Dated:   Rochester, New York
       June 13, 2024

              ENTER:

              CHARLES J. SIRAGUSA
              United States District Judge